IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV455-MU

| | |
|---|---|
| L&H TECHNOLOGIES, INC., d/b/a ) <br> LIVINGSTON & HAVEN RACING, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TECHNOSPORTS, INC. And FORD ) <br> MOTOR COMPANY d/b/a FORD ) <br> RACING TECHNOLOGY, ) <br> ) <br> Defendants. ) <br> _____) | ORDER |

This matter is before the court upon Defendant Ford Motor Company's ("Ford") Motion to Dismiss, or in the alternative, to stay this action pending resolution of an action raising the identical issues filed by Ford against Plaintiff L&H Technologies, Inc. ("L&H") in the United States District Court for the Eastern District of Michigan.

**FACTS**

This lawsuit arose over a dispute between Ford and L&H as to who is the creator and designer of an apparatus known as the "K-Rig." The K-Rig is an apparatus designed to collect, process, and display data regarding the chassis systems of NASCAR race cars. Ford alleges that it provided detailed specifications, directions, and requirements to L&H as to the design of the K-Rig subject to L&H's explicit agreement that this information constituted Ford's confidential and proprietary information and was to be used by L&H for the purpose of building the K-Rig for Ford alone. Ford contends that the K-Rig was the conception of Ford's wholly-owned

1

subsidiary, Ford Racing Technology ("FRT"), and Ford engaged L&H to build the K-Rig through Ford's first-tier supplier, Technosports, Inc. ("Technosports"). To the contrary, L&H contends that it designed and created the K-Rig, and was approached by Technosports regarding the purchase of the K-Rig. L&H further argues that neither Technosports nor Ford provided L&H with any design or manufacturing ideas, schematics, guidance or instruction pertaining to the K-Rig. Shortly after the completion and delivery of the K-Rig to Technosports, L&H began to market the K-Rig to potential customers. FRT became aware that L&H was marketing the K-Rig for sale and distributing promotional material bearing Ford's registered design trademarks and depicting the K-Rig in conjunction with, and displaying highly-confidential performance data regarding, FRT race cars.

On September 22, 2005, L&H received notice that Ford maintained that L&H was not permitted to sell the K-Rig to other parties and that "[s]hould L&H release a CD with any materials which would represent this machine as saleable by L&H," Ford "might consider proper legal action in accordance with your companies (Technosports) agreement with Ford and with L&H." L&H disputes that any agreement exists between L&H and Technosports and/or Ford with regard to L&H's right to sell the K-Rig to third parties.

The parties both contend that some initial progress was made in settling the dispute, and L&H indicated a preliminary intent to cease its use of Ford's trademarks. In the course of settlement discussions, however, Ford clarified that it not only objected to the use of its trademarks, but objected to any attempt by L&H to market or sell the K-Rig.

L&H argues that as a result of Ford's position, L&H was faced with uncertainty as to whether it could market and sell the K-Rig, and initiated this action on September 26, 2005 in

state court seeking a declaration as to the rights of the parties with respect to the intellectual property related to the K-Rig. Ford and Technosports removed the action to this court on October 27, 2005. On November 1, 2005, Ford instituted an action in the United States District Court for the Eastern District of Michigan against L&H, which includes trademark claims.

**DISCUSSION**

Where the same parties have filed similar litigation in separate federal fora, doctrines of federal comity dictate that the matter should proceed in the court where the action was first filed, and that the later-filed action should be stayed, transferred, or enjoined. Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.Supp.2d 357, 360 (2003). In Learning Network, Inc. v. Discovery Communications, Inc., 11 Fed. Appx. 297 (4th Cir. 2001), the Fourth Circuit recognized the first-filed rule and stated that priority is given to the first suit absent a showing of a balance of convenience in favor of the second. The court also alluded to the fact that certain "special circumstances" may warrant a departure from the first-filed rule, such as improper anticipatory filing, or "racing to the courthouse" once there is a threat of imminent litigation. Id. at 301. In other words, there may be a point at which "the potential lawsuit that may otherwise have given rise to a proper declaratory judgment action has become so certain or imminent, that the declaratory judgment action is merely an improper act of forum shopping, or a race to the courthouse." Id. Since the courts look with disfavor on such procedural fencing, this may be a factor that counsels against exercising jurisdiction over a declaratory judgment action. Id.

In Learning Network, the plaintiff received a "relatively mild" [1] cease and desist letter reserving all rights and remedies. In response, the plaintiff sent a letter stating that they were "looking into" the allegations and would respond promptly. Despite these assurances, the plaintiff filed a declaratory suit five days later without responding. The defendants filed their own action in a different forum nearly five months later. Clearly, the plaintiff engaged in potential bad faith in giving assurances that a response would be forthcoming. However, the court held that plaintiff's filing "was not an act of procedural fencing, so as to merit an exception to the first-filed rule." Id. at 302. Moreover, citing the defendant's delay in filing the second suit, the court pointed out that "there can be no race to the courthouse when only one party is running." Id. at 301.

It is clear that the first-filed rule is applicable herein, due to the similarity of the parties and issues. Thus, the court must turn to the issue of whether there are any "special circumstances" to warrant an exception to the rule.

Ford argues that the first-filed rule should not apply here because this action was filed by L&H in a "race to the courthouse" and for the purpose of procedural fencing. Ford argues that L&H engaged in a race to the courthouse when it filed suit while negotiations were ongoing. Moreover, Ford argues that there is no evidence that L&H had any legitimate reason for filing suit, rather it simply sought to gain leverage against Ford in settlement negotiations.

The court finds that there is no evidence of inequitable conduct or procedural fencing on the part of L&H. An email from Ford stating that it "might consider proper legal action" is

---

[1] The letter "neither overtly threatened litigation nor threatened to take particular action if [plaintiff] failed to respond to the letter by a certain date." Id. at 301-02.

insufficient to give rise to the notion that litigation is so certain or imminent so as to render L&H's filing of a declaratory judgment action improper forum shopping or a "race to the courthouse." Moreover, Ford waited over a month after receiving notice of this suit to file its suit in Michigan. As the Fourth Circuit stated in Learning Network, "there can be no race to the courthouse when only one party is running." Id.

The first-filed rule may also be bypassed when the balance of convenience favors the second action. Id. at 302. L&H has argued extensively in its brief that the balance of convenience sways in favor of this district. Ford has failed to address this argument, other than stating that convenience of the forum is irrelevant and making a conclusory argument that the Eastern District of Michigan is equally convenient. The court finds that the balance of convenience does not sway in either direction and thus the first-filed rule applies to maintain the first-filed declaratory suit here.

IT IS THEREFORE ORDERED that Ford's Motion to Dismiss or, in the Alternative, to Stay is hereby DENIED.

**Signed: January 20, 2006**

*Graham C. Mullen*
Graham C. Mullen
Chief United States District Judge